JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, John W. Gregg, appeals from a common pleas court judgment finding him guilty of contempt of court and imposing a fine of $250 and 30 days in the county jail. He asserts that the evidence of direct contempt was insufficient as a matter of law, that the court erred by failing to provide a detailed journal entry stating the facts upon which the conviction was based, that his conduct did not constitute indirect contempt, and that the court erred by conducting a summary proceeding. We find the common pleas court abused its discretion and deprived appellant of due process by summarily punishing appellant for contempt for perjury. Therefore, we reverse and remand for further proceedings according to law on the show cause order.
 Facts and Procedural History {¶ 2} Appellant filed a complaint against defendant McDonald's Restaurant[1] alleging permanent injuries to his head, knees and back as a result of a slip and fall at the defendant restaurant. In response to the defendant's motion for summary judgment, plaintiff presented as evidence his own deposition testimony and the affidavit of Charles Maxwell. In his own deposition, appellant testified that he went to the restaurant alone in the early evening of June 25, 2003. He placed his order, then went to the restroom while waiting for his food to be prepared. He used the urinal. As he approached the sink thereafter, he fell. There was water and soap on the floor and countertop. As he was falling, a McDonald's employee entered the room. The employee left and got another man, and together they tried to get appellant up and out of the restroom. Appellant also said that "I was approached by a man, he came into the bathroom and gave me his name and stuff and said he had went to the counter and told them about the bathroom, the condition of the bathroom." He recalled the man's name was Charles Maxwell, but did not know his telephone number.
 {¶ 3} Maxwell's affidavit stated that he did not personally know any of the parties involved here, but that he had knowledge of relevant facts. He said that after he used the men's restroom, he noticed water and soap on the floor, and told a female employee at the counter about this dangerous condition. Ten or fifteen minutes later, he saw an employee enter the restroom with a mop, just after appellant fell.
 {¶ 4} The record does not reveal any ruling on the summary judgment motion; instead, the matter was referred to arbitration. Although the arbitration award is not included in the record, appellant appealed the award and requested a trial de novo. The court then scheduled the matter for jury trial.
 {¶ 5} On the date the case was set for trial, defense counsel informed the court that he had uncovered evidence that appellant and Charles Maxwell knew one another at the time of appellant's fall. Defense counsel learned that appellant and Maxwell had filed insurance claims for property damage some eight months before appellant's fall, in connection with a collision in which appellant backed his vehicle into Maxwell's Ford Explorer. In addition, defense counsel reported that emergency room records from appellant's hospitalization for both this incident and for another injury a month later listed Charles Maxwell as the person to contact in case of emergency. According to defense counsel, this evidence contradicted appellant's and Maxwell's deposition testimony, which suggested that they had not known each other before this incident.
 {¶ 6} After this disclosure, appellant voluntarily dismissed his complaint, without prejudice. However, the court scheduled a contempt hearing for 3:00 p.m. on the same day, suggesting that the appellant's behavior was a fraud on the court and a contempt. The court indicated that it would ask the public defender to represent appellant at the hearing. One minute before the hearing, at 2:59 p.m., the court filed an order to appellant to show cause why he should not be held in contempt. There is no indication in the record that appellant or his counsel were served with the order before the hearing.
 {¶ 7} At the contempt hearing, the restaurant's attorney quoted from appellant's deposition testimony and the averments in Maxwell's affidavit, both of which were attached to appellant's brief in opposition to the motion for summary judgment. In addition, the restaurant's attorney also referred the court to Maxwell's deposition testimony, a copy of which had also been filed with the court. At his deposition, Maxwell testified that he owned United Handyman. The restaurant's attorney stated that appellant listed United Handyman as his employer on his emergency room records, and also named Maxwell as the person to contact in case of emergency. The restaurant's attorney also said that, at the arbitration hearing, appellant denied under oath that he knew Maxwell, but the testimony at the arbitration hearing was not recorded.
 {¶ 8} At the conclusion of the hearing, the court found "beyond a reasonable doubt that the defendant [sic] had violated the Contempt Statute and has obstructed the administration of justice," and sentenced him to the maximum available sentence, a $250 fine and 30 days' imprisonment.
 Law and Analysis {¶ 9} The parties here agree that the court summarily found appellant guilty of direct criminal contempt of court. A direct contempt is one that occurs in the presence of the court or so near to it as to obstruct the orderly administration of justice, and may be summarily punished. R.C. 2705.01; In re McGinty (1986), 30 Ohio App.3d 219, 223. In this case, the cited conduct did not occur in the court's immediate presence. It occurred outside the court's presence, in deposition testimony and affidavits. Although some of these evidentiary matters were submitted for the court's consideration in ruling on the defendant's motion for summary judgment, no fraud on the court was accomplished because the court never ruled on the summary judgment motion and therefore never relied on the evidence.
 {¶ 10} At the contempt hearing, the court indicated that a contempt had occurred in the court's immediate presence because, in the proceedings earlier that day, appellant "looked to counsel, and the Court and said that he didn't know the fellow and didn't know who the fellow in the accident was."[2] We are unable to find any record of this event in the transcript of proceedings. In any case, a contention by appellant in open court that he did not know Maxwell was not so obviously false or obstructive to the proceedings as to require immediate punishment. When appellant allegedly made this statement, there was no evidence that appellant did know Maxwell. The only "evidence" was the unsworn hearsay statements of defense counsel about appellant's prior insurance claim and the contents of appellant's medical records. Thus, even if appellant made this statement in the court's presence, it was not subject to summary punishment.
 {¶ 11} The threat to the administration of justice from appellant's conduct is clear. In re Estate of Wright (1956), 165 Ohio St. 15. However, not every direct contempt justifies summary punishment. In reLodico, Stark App. No. 2003-CA-00446, 2005-Ohio-172, ¶ 42. The summary contempt power is an exception to normal due process requirements, and must be confined to circumstances in which "`all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public.'"Pounder v. Watson (1997), 521 U.S. 982, 988 (quoting In re Oliver
(1948), 333 U.S. 257, 275). In this case, the judge did not have personal knowledge of appellant's misbehavior. Although the court knew that appellant denied knowing Maxwell, evidence was necessary to show that appellant did know him. Appellant was deprived of due process by having been convicted of direct criminal contempt on the unsworn statements of defense counsel in a summary proceeding conducted without prior notice and an opportunity to present a defense. Nor did appellant's misconduct constitute an imminent threat to the administration of justice. Therefore, the court erred by summarily punishing appellant for direct criminal contempt.[3]
 {¶ 12} Accordingly, we reverse and remand for further proceedings.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. and McMonagle, J. CONCUR.
[1] A subsequent amended complaint substituted T.P. Corporation as the defendant.
[2] The "accident" was an automobile collision in which appellant allegedly backed his vehicle into Maxwell's. Defense counsel reported that, eight months before this slip and fall, both appellant and Maxwell had made insurance claims for damages as a result of this collision, implying that they knew one another at the time of appellant's fall.
[3] In the rush to judgment in a summary proceeding against the plaintiff-appellant, the court also failed to consider that Maxwell might also be guilty of contempt for submitting a false affidavit.